UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DUNCAN J. MCCRAY,

        Petitioner,                         Case No. 05-10219
                                                          Honorable David M. Lawson

v.

DOUG VASBINDER,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Duncan J. McCray, presently confined at the Kinross Correctional Facility in Kincheloe, Michigan, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 claiming that his convictions for first-degree premeditated murder, Mich. Comp. Laws § 750.316(1), two counts of assault with intent to commit murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of a felony (felony firearm), Mich. Comp. Laws § 750.227b, were obtained in violation of the Constitution and laws of the United States. He alleges that insufficient evidence was presented to sustain the murder conviction, the trial court erred in failing to grant a motion to quash the information, and a jury instruction regarding flight was improper. The respondent has filed a response to the petition alleging that the petitioner did not exhaust his claims and they should fail in any event for lack of merit. The Court finds that the petitioner's claims have been exhausted but they lack merit, and therefore the Court will deny the petition.

I.

The petitioner was charged with the first-degree murder of Tera Thomas and assault with the intent to murder Samuel Crowder and Christopher Thomas after a confrontation that occurred between Christopher Thomas and his family, and the petitioner's friends in the early morning on July 30, 2001. He was tried before a jury in the Wayne County, Michigan circuit court in December 2002.

According to the testimony of Wayne County assistant medical examiner Dr. Cheryl Loewe, Tera Thomas died as a result of multiple gunshot wounds, one to the face and one to the back. There was "evidence of . . . gunpowder stippling on the skin surrounding the bullet hole," which indicated the Ms. Thomas was shot at close range, within two feet. Trial Tr., Vol. I, 131.

Todd Thomas, Ms. Thomas's nephew, testified that he was with cousins Kevin and Brian Thomas at a gas station in the City of Detroit at approximately 2:00 a.m., on July 30, 2001, when they saw someone outside the gas station vomiting. The individual who was getting ill was surrounded by three or four other people, including the petitioner. Kevin Thomas approached the group and asked the ill individual if he was okay. Kevin Thomas and that individual then began fighting. Todd Thomas testified that he and Brian then fled. Todd and Brian returned to the house of Todd's father, Christopher Thomas, and informed his father what had transpired. Kevin Thomas had not yet returned. Christopher Thomas, Tera Thomas (Christopher's sister), her boyfriend, Samuel Crowder, and Todd and Brian got into a vehicle and drove around looking for Kevin. They found Kevin, who got into the back seat of the vehicle with Todd, Brian, and Tera. Christopher Thomas drove around looking for the men who assaulted Kevin and found four or five men believed to be involved in the earlier altercation. Christopher, Kevin, and Crowder exited the vehicle to talk with the men. Todd testified that there was no argument or heated exchange. Tera began to get out

of the car, but Christopher told her to get back in. Then Todd heard gunshots, and Tera covered the boys with her body. Todd concluded that he knew that the shooting was committed by a tall person with dark skin because the other individuals at the scene ran away. Todd testified that the petitioner was the only person among the group who fit that description.

Christopher Thomas testified that when he found out what had happened at the gas station, he went looking for the men who had "jumped" Kevin. He located the petitioner and three other men, and exited the car to confront them. He testified that neither he nor Crowder threatened, cursed at, or attacked the men. Christopher testified that after the conversation ended, he began to re-enter his vehicle. At this point, the petitioner shot at him and the bullet grazed his arm, and Crowder fled. He then saw the petitioner walk to the rear passenger door, and shoot his sister twice. The petitioner then turned, looked at Christopher, and pulled the trigger on the gun twice more, but no bullets were fired. Christopher testified that he later identified the petitioner at a photographic lineup. He admitted that he had consumed between four and five cans of beer during the hour and a half preceding the incident.

Samuel Crowder testified that he had been Tera Thomas' boyfriend. He accompanied Tera's brother, Christopher, on his quest to find the men who had fought with Kevin. He exited the car with Christopher when they located the men. Crowder saw the petitioner approaching Christopher, and he was concerned that the petitioner was going to attack Christopher from his blind side. Crowder stood between the petitioner and Christopher and told the petitioner, "you don't want to do that because you don't want any of me." Trial Tr., Vol II, 130. Crowder then witnessed the petitioner "lean over as if to whisper something to one of the other guys." *Id.* at 131. At this point, Christopher told Crowder that they should leave. Crowder turned to go back to his seat in the car,

and then he "heard a loud blast and [he] felt some heat on the side of [his] face." *Ibid.* Crowder then took off running and looked behind him to see the petitioner point the gun at him and fire again. The bullet hit Crowder in the back. Crowder then witnessed the petitioner shoot at Christopher and fire several shots into the car.

Darrell Gladden and Frederick Martin both testified that they were with the petitioner on the night of the shooting. Martin testified that Christopher Thomas and Crowder approached the group, but they were not screaming, cursing, or attempting to attack any of them. After the conversation ended, he and Gladden prepared to leave, and Christopher and Crowder began walking back to the vehicle. Martin testified that the petitioner said "someone give me my heater," which he understood to mean "give me my gun." Trial Tr., Vol II, 75. Martin testified that the petitioner fired several shots, although Martin took off running after the first shot.

Gladden testified that Christopher was angry and cursing at Martin. The petitioner stepped between Gladden and Christopher and "exchanged words." *Id.* at 106. Gladden yelled out that he and his group were drunk, and that he wanted to forget about the incident. Gladden testified, "At that time the driver, he had stopped talking and started walking back towards his car, but the passenger, at first he was still standing in front of Fred, and then he kind of lingered off after the driver." *Id.* at 107. Gladden began to leave the scene and heard a shot fired. He looked over his shoulder to see the petitioner with a gun. Gladden then witnessed the petitioner point the gun at Tera Thomas and fire. Gladden took off running. He testified he heard a total of six shots.

The petitioner testified in his own defense. He testified that he was present for the altercation at the gas station, but then he left the group to go to the house of his girlfriend, Quiana Taylor. He testified that from there he called the mother of his child, Crystell Jones. He claims that

he was not present at the shooting. He also testified that although he was told that the police were looking for him, he did not go to talk to the police because he was afraid. He also testified that his car was taken by the police, but he did not attempt to secure its release. He admitted that he knew the police were looking for him for a year but did not turn himself in.

The jury found the petitioner guilty of first-degree premeditated murder, two counts of assault with intent to commit murder, and felony firearm. On December 20, 2002, he was sentenced to life imprisonment without parole for the murder conviction and life imprisonment for each of the assault with intent to murder convictions, both sentences to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

The petitioner filed an appeal of right in the Michigan Court of Appeals in which he argued: (I) the evidence was insufficient to sustain the murder conviction; (ii) the trial court erred in failing to grant a motion to quash the information; and (iii) the trial court erred in instructing the jury on flight. The Michigan Court of Appeals affirmed the petitioner's convictions. *People v. McCray*, No. 247046 (Mich. Ct. App. June 10, 2004).

The petitioner filed an application for leave to appeal in the Michigan Supreme Court presenting the claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. McCray*, 471 Mich. 949, 690 N.W.2d 112 (Dec. 29, 2004).

The petitioner now seeks habeas corpus relief on the following grounds:

I. [T]he prosecutor [did not present] sufficient . . . evidence of premeditated murder.

II. The trial court abused its discretion in failing to grant the motion to quash the information.

III. The trial court erred in instructing the jury as to flight.

The respondent has filed an answer to the petition arguing that all of the petitioner's claims are unexhausted and meritless.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Under those amendments, a prisoner filing a petition for a writ of habeas corpus under 28 U.S.C. §2254 must first exhaust all state remedies. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Exhaustion requires that a prisoner "fairly present" the substance of each federal constitutional claim to the state courts using citations to the United States Constitution, federal decisions using constitutional analysis, or state decisions employing constitutional analysis in similar fact patterns. *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). "The exhaustion requirement is satisfied when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on petitioner's claims." *Rust*, 17 F.3d at 160. A Michigan petitioner must present each ground to both Michigan appellate courts. *Mohn v. Bock*, 208 F. Supp. 2d 796, 800 (E.D. Mich. 2002); *see also Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). The burden is on the petitioner to prove exhaustion. *Rust*, 17 F.3d at 160.

The petitioner presented to the state courts on direct appeal the identical issues contained in the present habeas petition. The respondent argues that the petitioner did not exhaust his federal claims, however because he failed to rely on federal law when arguing those issues in state court. This argument need not detain the Court, however, because the petitioner's state court claims were based on "state decisions employing constitutional analysis in similar fact patterns" to federal constitutional decisions. *Levine*, 986 F.2d 1516. For instance, the petitioner's sufficiency of evidence claim was supported by citation to *People v. Hampton*, 407 Mich. 354, 285 N.W.2d 284 (1979), which in turn was based on *Jackson v. Virginia*, 443 U.S. 307 (1979). In support of the jury instruction issue, the petitioner cited *People v. Lukity*, 460 Mich. 484, 596 N.W.2d 607 (1999), which relied on *People v. Mateo*, 453 Mich. 203, 551 N.W.2d 891 (1996), which in turn involved a discussion of *Chapman v. California*, 386 U.S. 181 (1967). The Court concludes that the petitioner's state issues were sufficiently "federalized" to satisfy the exhaustion requirement, and the respondent's exhaustion defense, therefore, lacks merit.

III.

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for the merits of habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Therefore, federal courts normally are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000) ( internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision

unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11; *see also Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *King v. Bobby*, 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

A.

In his first habeas claim, the petitioner argues that insufficient evidence was presented to support his conviction for first-degree murder. "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). The critical inquiry on habeas review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson*, 443 U.S. at 318-19 (internal citation and footnote omitted). A federal court may not reweigh the evidence or redetermine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). "It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992)). The sufficiency of evidence "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Therefore, a court reviewing a claim of insufficient evidence on habeas review must accord "deference at two levels . . . first, to the jury's verdict as contemplated by *Jackson*, and, second, to the state court's consideration of the jury's verdict as dictated by AEDPA." *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007).

The state court of appeals applied the *Jackson* standard vis-à-vis the elements of first-degree murder under state law in affirming the petitioner's convictions. It held:

> In order to prove that a defendant committed first-degree murder, the prosecution must present evidence establishing that "the defendant intentionally killed the victim and that the killing was premeditated and deliberate." *People v. Marshack*, 231 Mich. App. 364, 370-71; 586 N.W.2d 234 (1998). In *People v. Gonzalez*, 468 Mich. 636, 641; 664 N.W.2d 159 (2003), our Supreme Court explained as follows:
>
>> To show first-degree premeditated murder, some time span between the initial homicidal intent and ultimate action is necessary to establish premeditation and deliberation. The interval between the initial thought and ultimate action should be long enough to afford a reasonable person time to take a "second look." [Citations omitted.]
>
> This Court has stated that premeditation and deliberation characterize a thought process undisturbed by hot blood. *People v Plummer*, 229 Mich App 293, 300; 581 NW2d 753 (1998). A sufficient opportunity for a second look may be seconds, minutes, or hours, depending on the totality of the circumstances surrounding the killing. *People v Meier*, 47 Mich App 179, 191-192; 209 NW2d 311 (1973).

> In the instant case, the testimony concerning the totality of the circumstances provided the jury with sufficient evidence to infer that defendant acted with premeditation and deliberation. Although a confrontation occurred between a group that included defendant and a second group that included decedent, witnesses from both sides described it as a conversation that was neither heated nor violent. Further, there was testimony that the conversation had ended, and the decedent's brother was returning to the car when defendant began shooting. Further, the decedent's boyfriend, Samuel Crowder, testified that, during the conversation, he got out of the car when he observed defendant attempting to sneak up on the decedent's brother. Crowder testified that he stepped in front of defendant and said, "You don't want to do that because you don't want any of me," and that defendant responded by staring at him for a minute and then backing up and whispering something to one of his companions. As Crowder walked back to the car, defendant shot and wounded him before firing at the decedent's brother and the decedent. Finally, one of defendant's companions, Frederick Martin, testified that after the discussion ended, the matter appeared to be settled, and the decedent's brother started to return to his car, Martin heard defendant ask someone to pass him his "heater," a slang term for a gun, saw defendant fire a shot at the driver, and heard more shots as Martin was running away.
>
> Based on the testimony, a rational jury could have inferred that defendant initiated the shooting following a thought process undisturbed by hot blood. Additionally, a jury could have reasonably concluded that defendant's pause after being confronted by Crowder and the time he took to obtain the weapon constituted a sufficient period to afford a reasonable person time to take a second look. Further, there was evidence that, after the shooting began, defendant had an opportunity for a second look before firing at the decedent. Decedent's brother testified that after defendant fired at him, defendant went to the rear door of the car where decedent was sitting, reached in through the window, and shot decedent twice. And one of defendant's companions, Darrell Gladden, testified that he observed defendant fire several shots and then walk back towards the rear door of the driver's side of the car. Although Gladden then fled, he heard two more shots as he ran away. A rational jury could have determined that the time it took defendant to walk over to the car provided him with sufficient opportunity for a second look before he shot decedent.

*McCray*, slip op. at 1-2.

The Court finds that the state court's thorough and well-reasoned analysis of the evidence properly applied the *Jackson* standard of review. The state court identified several items of evidence from which a rational jury could have concluded that the petitioner had an opportunity to deliberate his intention to kill between the confrontation and the shooting of Tera Thomas. The state court's

conclusion that the evidence was sufficient to support the conviction of first-degree murder was a reasonable application of federal constitutional law. Therefore, the petitioner is not entitled to habeas corpus relief on the ground that the state failed to prove his guilt.

B.

In his second claim for habeas corpus relief, the petitioner argues that the trial court erred in denying his motion to quash the criminal information on the charge of first-degree murder because insufficient evidence of premeditation and deliberation was presented at the preliminary examination.

The Constitution does not require that a probable cause hearing be conducted prior to a criminal trial. *See Gerstein v. Pugh*, 420 U.S. 103, 119, 125 n. 26 (1975). An "illegal . . . detention does not void a subsequent conviction." *Id.* at 119. Therefore, a state court's decision to hold a person for trial does not implicate a federal Constitutional right, especially when there is sufficient evidence of the crime presented at trial to satisfy the Due Process Clause. The bind-over decision itself invokes a question of state law, which is not cognizable on habeas corpus review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, (1991); *Dorchy v. Jones*, 320 F. Supp. 2d 564, 578-79 (E.D.Mich. 2004) (denying habeas relief on petitioner's claim there was insufficient evidence to bind him over for trial). Habeas relief is not warranted on this claim.

C.

In his final claim for habeas relief, the petitioner argues that the trial court erred in instructing the jury on flight because insufficient evidence was presented at trial to support the instruction. The trial court instructed the jury:

> There has been some evidence that the Defendant fled or hid after the alleged crimes he was accused of. This evidence does not prove guilt. A person may run or hide for innocent reasons such as panic, mistake, or fear.

Trial Tr., Vol. III, 107.

Generally, a claim of instructional error is not cognizable in a federal habeas action unless the jury instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned', but that it violated some [constitutional] right.'" *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). In assessing a jury instruction under that standard, "the instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The Sixth Circuit has rejected habeas corpus challenges to the very instruction given in this case, at least when there was some evidence of flight or hiding. *Burton v. Renico*, 391 F.3d 764, 778-79 (6th Cir. 2004).

The Michigan Court of Appeals determined that there was no evidence of flight presented at trial, but the petitioner admitted that he avoided the police and did not attempt to gain release of his vehicle, which the police had impounded. The court of appeals assumed, without deciding, that the instruction was not supported by the evidence and concluded that the error was harmless. The court of appeals reasoned that because the instruction cautioned the jury that evidence of hiding did not prove guilt and that people hide for innocent reasons, it did not harm the petitioner's defense. *McCray*, slip op. at 3.

The Court agrees that any error in the instruction did not "'so infect[] the entire trial that the resulting conviction violates due process.'" *See Estelle*, 502 U.S. at 72. The trial court instructed

the jury that evidence that the petitioner hid from police did not necessarily prove guilt because people may flee or hide for innocent reasons. The flight instruction could have worked to petitioner's benefit by supporting the petitioner's testimony that he avoided police out of fear rather than a guilty conscience. Certainly there is no basis to believe that the instruction had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1995); *see also Fry v. Pliler*, 127 S. Ct. 2321 (2007); *Vasquez v. Jones*, 496 F.3d 564, 575 (6th Cir. 2007). Therefore, the petitioner is unable to establish that this instruction deprived him of a fair trial, and he is not entitled to habeas relief on this claim.

IV.

The petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [dkt. #1] is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: July 17, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 17, 2008.

s/Felicia M. Moses
FELICIA M. MOSES

---